WILLIAM M. CAMPION, RELATOR, V. JOHN A. GILLAN,
RESPONDENT.

FILED JUNE 22, 1907. No. 15,028.

1. **Pardon:** LIMITATIONS ON POWER. The governor of the state has no
   authority to order a sheriff to release a prisoner committed to his
   custody by judgment of a court.

2. ———: ———. The governor has no power to pardon a prisoner
   found guilty of bastardy and adjudged to be the reputed father
   of an illegitimate child.

3. ———: ———. The word "offenses" as used in section 13, art. V
   of the constitution, is equivalent to "crimes." The governor
   cannot pardon an offense until after conviction by the judgment
   of a court.

ORIGINAL application for a writ of habeas corpus. *Writ
denied.*

*Burr & Marlay,* for relator.

*J. J. Thomas, M. D. Carey* and *C. E. Holland, contra.*

SEDGWICK, C. J.

The relator, William M. Campion, was tried in the dis-
trict court for Seward county upon a charge of bastardy
preferred against him by one Nellie M. Lattimer. The
jury returned a verdict of guilty, and thereupon on the
6th day of December, 1902, the court adjudged him to be
the reputed father of the complainant's bastard child,
and ordered that he stand charged with the maintenance
of the child in the sum of $1,000, and adjudged the costs
of the prosecution against him. It was adjudged that the
said sum of $1,000 should be paid in instalments, $200 in
the following January, and $100 on the first day of Jan-
uary each year thereafter, with interest at 7 per cent. on
deferred payments after maturity; and it was further
ordered that the defendant give security for payment in
accordance with the decree, and that, in default of pay-

ment and of giving security, he "stand committed to the jail of Seward county according to law." The defendant failed to comply with the decree, and an order of commitment was duly issued committing him to the jail of Seward county in accordance with the decree. On the 24th day of October, 1906, the governor made an order in these words: "In the Matter of the Application for Pardon of William M. Campion, confined in the jail of Seward county, Nebraska: To John Gillan, Sheriff of Seward county, Nebraska, Seward, Nebraska. Sir: Upon receipt of this order you will release from confinement William M. Campion, now serving an indefinite sentence in your county jail, and this order is your authority for such release. (Seal.) (Signed.) John H. Mickey, Governor." This document having been delivered to the sheriff of Seward county, he thereupon discharged the relator from jail, and afterwards upon complaint being made to the district court of that county, an order was made directing the sheriff to retake the relator and again commit him to jail. Pursuant to this order the relator was again committed to jail. In November, 1906, the defendant having been charged in the district court for Seward county with the crime of abandoning his infant child under section 212a of the criminal code, he was placed upon trial in that court before a jury, and on the 29th day of that month the jury returned a verdict of guilty against him. Thereupon a motion for new trial was filed in the case, and, while the same was pending, the governor issued a pardon in the following words: "The State of Nebraska, ss.: Executive Office, Lincoln. In the name and by the authority of the state of Nebraska, John H. Mickey, governor of said state, in the matter of the application of William M. Campion, for a pardon, to all to whom these presents shall come, sends greeting: Whereas, in the month of December, A. D. 1902, in an action pending in the district court for Seward county, Nebraska, wherein one Nellie M. Lattimer was the complaining witness and said William M. Campion was defendant, said Campion

was convicted in a trial to the jury of the crime and offense of bastardy, and whereas on October 24th, '06, in the manner provided by law on application for pardon, said William M. Campion was pardoned by the governor of this state for said offense and of said conviction, and the sheriff of said county duly released and discharged said Campion on account of and because of said pardon; whereas, on the 28th day of November, 1906, notwithstanding said pardon, by an order of the judge of said district court for Seward county, said William M. Campion was again arrested of said offense and again confined in the county jail of Seward county; whereas, on the 28th day of November, 1906, in an action pending in said district court for Seward county, Nebraska, wherein the state of Nebraska was plaintiff and said William M. Campion was defendant, he was convicted of the crime of abandonment and refusal and neglect to support without good cause the said child named in said proceedings as the reputed father of said illegitimate child and is now confined in the county jail of Seward county: Therefore, (1) know ye, that in consideration of the premises I hereby pardon the said William M. Campion, and he is hereby fully pardoned of each one of said offenses and convictions and orders of court, and the sheriff of Seward county is hereby ordered to release from confinement said William M. Campion. (2) All fines and forfeitures in connection therewith are hereby remitted. Given under my hand and the seal of the state of Nebraska this 22d day of December, A. D. 1906. (Seal.) John H. Mickey, Governor of the State of Nebraska. By the Governor: A. Galusha, Secretary of State." This document being presented to the sheriff of Seward county, he refused to recognize it, and thereupon this application was made to this court for a writ of habeas corpus.

1. It is contended in the brief that, after the relator had been discharged from confinement in the jail under the governor's order of October 24, above set forth, the district court had no jurisdiction in an *ex parte* proceeding

to order the sheriff to recommit the relator to jail. Our constitution and laws do not authorize the governor to order the sheriffs of the respective counties to discharge prisoners in their custody, and the sheriff should have entirely disregarded this order. After having without authority discharged the relator from jail, it was the duty of the sheriff on his own motion to have retaken the relator under the original order of commitment, and no formal proceedings in the district court were necessary for that purpose. The legality of the detention of the relator by the sheriff depends, then, entirely upon the force and effect of the governor's pardon issued on the 22d day of December, 1906.

2. Did the governor's pardon authorize the release of the relator from imprisonment under the commitment in the bastardy proceedings? The source of the pardoning power reposed in the governor is to be found in section 13, art. V of the constitution, which is as follows: "The governor shall have the power to grant reprieves, commutations and pardons, after conviction, for all offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as he may think proper, subject to such regulations as may be provided by law, relative to the manner of applying for pardons. Upon conviction for treason, he shall have power to suspend the execution of the sentence until the case shall be reported to the legislature at its next session, when the legislature shall either pardon or commute the sentence, direct the execution of the sentence, or grant a further reprieve. He shall communicate to the legislature, at every regular session, each case of reprieve, commutation or pardon granted, stating the name of the convict, the crime of which he was convicted, the sentence and its date, and the date of the reprieve, commutation or pardon." Was the relator convicted of an offense in these bastardy proceedings within the meaning of this constitutional provision? It is strenuously contended in his behalf that in determining this question great consideration

must be given to the nature and character of the imprisonment. It is said that the law requires that he be imprisoned until he complies with the order of the court, and that cases will frequently arise in which, through financial inability to comply with the order of the court, the imprisonment must be perpetual; that such a remedy must be in the nature of punishment, and if he is imprisoned as a punishment it must be upon conviction of an offense, and so the conclusion is derived that these conditions rendered applicable the constitutional provisions clothing the governor with the pardoning power. It is not entirely clear to our minds that this premise is sound, or that, if it is, the conclusion must necessarily follow. Great reliance is placed upon the opinion of this court in *Ex parte Donahoe,* 24 Neb. 66, as establishing the law to be that there is no remedy for a defendant in bastardy proceedings upon conviction and being ordered to make payment to the complaining witness, except to comply with the order of the court, and that, in case of inability to comply with the order of the court, no alternative remains but to remain perpetually in jail. In the opinion in that case the language of the statute *"there to remain until he shall comply with the requirements of the court"* is printed with emphasis, and the opinion also contains this language: "This proceeding, under the statute, does not offer any remedy for imprisonment under it but that of security to comply with the order of the court, nor any alternative but that of payment of the amount to the complaining witness, the mother of the child." And again: "Nor is there any remedy, other than acquiescence and compliance with the law, for his discharge." That was an application for a writ of habeas corpus, and, although other points were made, the one apparently argued in the brief was that the obligation to pay under the decree is a debt, and that imprisonment for debt is forbidden by the constitution. Of course, such obligation is not a debt within the meaning of the provision of the constitution relied upon. From the quotations in the brief printed in

the report it appears to have been stated that "the legislature had no constitutional power to authorize imprisonment without making provision for the discharge of the prisoner at some time and in some manner." But this proposition does not appear to have been argued or insisted upon, except for the purpose of showing what the true construction of the statute is, it being insisted that the statute intended that the prisoner might be discharged under the insolvent debtor's oath. At all events, it does not appear that any showing was made in the trial court of the prisoner's inability to pay. The regular and proper way to test the question would be to make such showing, and, if overruled by the trial court, an appeal (under our present statute) taken to this court would present the question. It is doubtful whether the question could be presented at all upon application for habeas corpus, and, even if it could, it would require a very strong showing, amounting substantially to absolute proof, so that the court would be without jurisdiction to continue the imprisonment.

In *Ex parte Cottrell*, 13 Neb. 193, the act providing for such imprisonment is held not to be unconstitutional. Although neither of these cases is a very strong authority for the proposition announced in the language above quoted from the opinion of Judge COBB, in *Ex parte Donahoe, supra,* this has probably been taken to be the rule by the profession generally ever since the publication of the opinion in that case. Many states have statutes expressly providing for the discharge of the prisoner when absolutely unable to pay. It may be doubted whether any state in the Union, or any civilized country, unless it be Nebraska, has ever held that there was absolutely no remedy under such circumstances. It is frequently said that habeas corpus is not an effective remedy. 5 Cyc. 671 ; *In re Wheeler*, 34 Kan. 96; *In re Walker*, 61 Neb. 803. There is a note to *State v. Brewer*, 37 Am. St. Rep. 752, 764 (38 S. Car. 263), in which the author says that in

some cases the statutes provide expressly for discharge, and then says: "Even without such a provision it would seem, on general principles, that, as the inability to pay negatives the existence of that contumacy which is a necessary element of a contempt of court, no one can be detained after he establishes the fact of his inability, and so it has been held in *Ryan v. Kingsbery*, 89 Ga. 228. In other cases it is said that the prisoner's proper remedy is to take advantage of the insolvent laws. *Rogers v. State*, 5 Yerg. (Tenn.) 368; *Wood v. Wood*, Phil. Law. (N. Car.), 538. The principal case shows that this remedy has in South Carolina been converted into a statutory one. But whether the inability of a defendant to discharge a pecuniary liability imposed upon him is ascertained by regular insolvency proceedings, or simply by producing the necessary evidence in the court from which the order for his commitment was issued, it is possible that no legislation would be valid which would undertake to deprive one so situated of the privilege of procuring his release in one or other of these ways." A prosecution in bastardy is a civil action. We have no statute making bastardy a crime, and there are no common law crimes punishable in this state. The fact that he may be brought before the court by warrant to answer to the complaint does not determine the character of the proceedings. The legislature may authorize any civil action for the recovery of a penalty or forfeiture, or for fraud or trespass, to be so begun. Unless the action is for the recovery of debt upon contract the legislature may provide this remedy, and in all such actions the legislature may provide for the enforcement of the judgment by imprisonment. Imprisonment as a punishment in such cases is not authorized. It is solely for the purpose of coercing the defendant to perform the duty which the judgment of the court requires of him. When a court of competent jurisdiction in proper proceedings for that purpose adjudges a party to perform some specific act, and obedience is refused, he is committed until he complies with the order of the court. If this were

not so, such judgments would be idle.  Mandamus and kindred remedies would be abandoned.  But imprisonment under such order is never continued after it is made to appear that it is impossible for him to perform the thing required of him.  Do these principles apply to judgments in bastardy proceedings under our statute?  We do not regard the above cited cases, entitled *Ex parte Donahoe* and *Ex parte Cottrell,* as decisive of this question, and, even if they should be so held, they do not furnish a complete guide in determining the question now before us. Bastardy is not a crime under our statute.  Imprisonment therefor as a punishment is not allowed.  Can a governor remit a civil obligation?  Can he relieve the reputed father from his obligation to support his illegitimate child?  If such a proposition had been made without the prestige of the action of the governor of the state to support it, and not enforced by the argument of able and respected lawyers, we would have supposed that the mere statement of the question would have been sufficient answer.  The constitution gives the governor power to pardon "offenses," and it is suggested that bastardy is an offense, although we have no statute defining and punishing it as a crime, and so the governor may pardon the wrongdoer and relieve him from all consequences of his act.  The provision of our constitution is too plain to lead to such absurd conclusions.  The word "offense" in a public statute is generally though not always used as synonymous with "crime."  In *State v. West,* 42 Minn. 147, it is said that the terms, "crime," "offense" and "criminal offense" are all synonymous, and are ordinarily used interchangeably. At all events the words are so used in the section of the constitution under consideration.  There can be no doubt that "crime" in the latter part of the section is used as an exact equivalent of the word "offense" in the first part, and that the words "convict" and "sentence" are used with reference to both.  Unless there has been a crime and conviction the governor cannot interfere with a pardon. "A pardon is an act of grace, proceeding from the power

intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed." *United States v. Wilson,* 32 U. S. *150. A pardon affects only the public interest in the conviction. Private obligations cannot be discharged by it. *Ex parte Mann,* 39 Tex. Cr. Rep. 491, 73 Am. St. Rep. 961; *In re Nevitt,* 117 Fed. 448; *Estep v. Lacy,* 35 Ia. 419, 14 Am. Rep. 498; *In re Boyd,* 34 Kan. 570. The obligation of the relator to contribute to the support of his illegitimate child, as fixed by the judgment of the court, could not be released by the governor.

3. The governor can pardon only after conviction. The verdict of a jury is not a conviction within the meaning of the constitutional provision. The term is no doubt sometimes applied to finding a person guilty by a verdict of a jury. In ordinary speech it may be used in a still more general sense. It sometimes means the judgment of conviction pronounced by a court of competent jurisdiction. In statutes providing that conviction of crime may be shown to affect the credibility of a witness it has that meaning. *Commonwealth v. Gorham,* 99 Mass. 420; *Marion v. State,* 16 Neb. 349. Can it be supposed that the intention of the constitution makers was to forbid the governor to pardon the offense before proceedings had been begun in the courts, and to sanction his interference with the orderly course of those proceedings. In this case no final verdict had been rendered. The defendant had asked the court to set aside the verdict because of intervening errors, as he claimed, rendering it ineffectual. Nothing but the plainest language excluding any other meaning could justify the construction of the constitution contended for. But the language employed in the constitution precludes such a construction. The governor is required to communicate to the legislature each case of pardon granted, "stating the name of the convict, the crime of which he was convicted, the sentence and its date, and the date of the reprieve, commutation, or pardon."

This he could not do if there had been no judgment and sentence.

For these reasons, the relator is remanded to the custody of the sheriff of Seward county.

WRIT DENIED.