HAROLD LAMONT OTEY, APPELLEE AND CROSS-APPELLANT, V. STATE OF NEBRASKA ET AL., APPELLANTS AND CROSS-APPELLEES.

485 N.W.2d 153

Filed May 29, 1992. No. S-91-762.

Don Stenberg, Attorney General, J. Kirk Brown, and Sharon M. Lindgren, Special Assistant Attorney General, for appellants.

James R. Mowbray and Dorothy Walker, of Mowbray & Walker, P.C., and Shawn D. Renner, of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ., and HAMILTON and ICENOGLE, D. JJ.

PER CURIAM.

For reasons hereinafter set forth, a district court order enjoining the enforcement of Harold Lamont Otey's death sentence and requiring a new commutation hearing before the Nebraska Board of Pardons is reversed, and the cause is remanded to the district court with directions to dismiss Otey's petition.

Otey's petition to stay his execution was filed in the district court for Lancaster County after the Nebraska Board of Pardons refused to commute his death sentence to life imprisonment.

Enjoined by the district court from carrying out Otey's death sentence were the State of Nebraska; the Nebraska Board of Pardons; Board of Pardons members Governor E. Benjamin Nelson, Secretary of State Allen Beermann, and Attorney General Donald B. Stenberg; and Nebraska State Penitentiary Warden Frank Hopkins, who by virtue of his office is designated as executioner under Neb. Rev. Stat. § 29-2544 (Reissue 1989). Demurrers to Otey's petition by defendants Harold Clarke, director of the Nebraska Department of Correctional Services; Bob Houston, deputy warden of the

Nebraska State Penitentiary; and John Doe, real name unknown, appointed by Hopkins as executioner of the State of Nebraska, were sustained, and those defendants were dismissed from Otey's lawsuit.

The enjoined defendants timely filed their appeal with this court. The record reflects that Otey was convicted in 1978 of first degree murder for the slaying of Jane McManus while in the perpetration of a first degree sexual assault. The district court for Douglas County sentenced Otey to death. After numerous unsuccessful appeals by Otey in state and federal courts, this court, on March 19, 1991, issued Otey's death warrant, which carried an execution date of June 10, 1991. See *State v. Otey*, 236 Neb. 915, 464 N.W.2d 352 (1991) (history of Otey's appeals), *cert. denied* ____ U.S. ____, 111 S. Ct. 2279, 115 L. Ed. 2d 965 (June 6, 1991). When Otey filed an application for commutation with the Board of Pardons, his execution was automatically stayed. See Neb. Rev. Stat. § 83-1,132 (Reissue 1987).

In a May 24, 1991, letter to Governor Nelson, Otey's attorney, Victor Covalt, stated in part, "I would be happy to meet with you or any of your staff at any time *to discuss Mr. Otey or the Pardons Board procedure in this unusual case.*" (Emphasis supplied.) In a letter to Beermann dated May 30, 1991, Covalt wrote, "I would also appreciate some arrangement for filing [Otey's commutation] Application on Sunday, June 9, 1991." Following receipt of these letters, a June 6, 1991, meeting of the Board of Pardons was set. The meeting was called at the request of Stenberg to take testimony and discuss procedures for processing death penalty commutation applications. Taking active roles at the hearing were Covalt, Board of Parole Chairman Ronald Bartee, Clarke, and Michael Jacobs, the McManus family attorney. Larry Beaty, the Board of Pardons administrative assistant, reported that notice of the June 6 meeting had been publicized in the Midlands Business Journal of Omaha and the Lincoln Journal-Star newspaper. Also present were Nebraska's Governor, Secretary of State, and Attorney General, who comprise the Board of Pardons. See, Neb. Const. art. IV, § 13; Neb. Rev. Stat. § 83-1,126 (Reissue 1987). Although the stated

purpose of the meeting was to discuss capital cases in general, board members also discussed the likelihood of an imminent filing of a commutation application by Otey, as well as procedures which would apply specifically in Otey's case.

Covalt, in his presentation on behalf of Otey, referred specifically to Otey's case and thanked

> the Board for taking this time to look at procedures *and give us some guidance on how to do this* because it's our job to bring it forward to you in the best manner possible and so it's simply in the request, my statement with requesting that procedure be established on capital cases, being far different from the misdemeanor cases often heard, that the public, Mr. Jacobs, myself, Mr. Otey, all have a fair opportunity to make a full discussion of this case so you can make a full and well-advised opinion.

(Emphasis supplied.)

### BOARD-APPROVED PROCEDURES

During the June 6 meeting, the Board of Pardons voted to (1) allow the filing of a commutation application at any time before expiration of the deadline, rather than to allow filings only during office hours; (2) consider Otey's application, if filed, at the next regularly scheduled meeting on June 28, 1991; (3) consider the application after a hearing that would allow for unlimited time for the attorneys for the applicant, for the State, and for family members or their representatives, but limiting all other persons to 5-minute presentations; and (4) allow Otey to provide a statement to the Board of Pardons, rather than to appear in person. At the June 6 hearing, Bartee assured the Board of Pardons that an investigative report by the Nebraska Board of Parole regarding Otey could be prepared in time for a June 28 commutation hearing. Covalt requested that the Board of Pardons require a "full investigation."

It is to be noted that in fixing the procedures for death sentence commutations, the Board of Pardons, in substance, granted the requests in Covalt's letters of May 24 and 30. The Board of Pardons made arrangements for Otey's commutation application to be filed at any time before expiration of the deadline, rather than to allow filings only during office hours.

The board also decided to allow Covalt unlimited time to present Otey's plea and to allow Otey an opportunity to present a statement to the board. As Covalt requested, the procedure provided by the Board of Pardons afforded additional guidance as to the procedures to be followed in Otey's commutation hearing.

The following day, June 7, 1991, Otey filed an application with the Board of Pardons seeking to have his death sentence commuted to life imprisonment. This resulted in an automatic stay of execution until a ruling by the pardons board on Otey's application. See § 83-1,132.

A few days after the June 6 meeting, Bartee spoke with Beermann to clarify the role of the Board of Parole in death penalty commutation applications. By deposition, Bartee testified at the district court trial that Beermann told him that the Board of Parole was "strictly to interview Mr. Otey; that we were not to give a recommendation." Bartee said that he was instructed to conduct the interview by asking a list of questions provided by Otey's attorney.

## THE COMMUTATION HEARING

Otey's public commutation hearing was held on June 28 and 29, 1991. Notice of the hearing was publicized in the Midlands Business Journal of Omaha and the Lincoln Journal-Star newspaper. Additionally, news releases giving notice of the commutation hearing were circulated. At the hearing, the Board of Parole's investigative report was received into evidence. Governor Nelson stated that the hearing would be informal and that the rules of evidence would not apply. He noted that it was not the task of an executive board of clemency to determine legal guilt or innocence nor to determine the merits of the death penalty as a sentencing alternative in the courts.

In his opening statement, Otey's attorney, Covalt, provided details of Otey's background and stated his own belief that Otey was now a "different man than the man fourteen years ago." Covalt announced that "we are accepting the guilt finding, and we are not arguing with that." Covalt basically presented his views on why Otey should be granted clemency. Appearing on

behalf of the State of Nebraska were two Assistant Attorneys General, Sharon Lindgren and J. Kirk Brown. Before Lindgren's opening statement, Stenberg stated that although his Attorney General's office is responsible for handling criminal appeals, including death penalty matters, he had not instructed Lindgren and Brown as to what opinions they should or should not offer at Otey's commutation hearing.

Included in the materials presented to the Board of Pardons were Otey's videotaped statement to the Board of Pardons and statements of numerous witnesses in favor of Otey's commutation application. Before the beginning of testimony in opposition to the application, Otey's counsel *made and then withdrew Otey's objection* to the "unfairness" of appearing in a proceeding before a state board in which he was also being opposed by counsel for the State. Stenberg noted that the composition of the Board of Pardons, which includes the Attorney General, was decided by the people of Nebraska in their. Constitution. He also stated that "[i]t was obviously necessary for me to make an initial decision that . . . the State should be represented and the general direction needed to be given to the staff which is what I have done. The presentation they have put together I have not heard." Lindgren and Brown each then made presentations to the board which included photographs of the crime scene and Otey's audiotape confession to police. A substantial number of other witnesses testified in opposition to Otey's application for commutation.

Approximately 1 hour after the close of all the evidence, the Board of Pardons voted 2 to 1 to deny Otey's application for commutation. Beermann voted in favor of commutation. The board then set Otey's execution for July 1, 1991, and, pursuant to § 83-1,132, the Board of Pardons stated that it does "refuse to accept for filing further applications [for commutation] from the applicant, Harold Lamont Otey." We take judicial notice that on June 30 the U.S. Court of Appeals for the Eighth Circuit stayed Otey's execution until August 5, 1991. Thus, Otey had ample time to request that the Supreme Court or one of its judges stay Otey's Board of Pardons death warrant. See § 29-2544 and Neb. Rev. Stat. § 29-2545 (Reissue 1989).

## DISTRICT COURT ACTION

On July 1, 1991, Otey filed in the district court for Lancaster County an "Application for Writ of Mandamus and/or Request for Temporary and Permanent Injunction." Otey simultaneously filed a "Motion for Temporary Restraining Order" prohibiting his execution. That motion was granted by the court on July 2. At that time, neither the State of Nebraska nor the Board of Pardons had been named as a defendant. Defendants Nelson, Beermann, Stenberg, Clarke, and Hopkins each filed demurrers to the original petition, challenging the district court's jurisdiction over their persons and the subject matter and alleging that Otey failed to state facts sufficient to constitute a cause of action. These demurrers, other than the one filed by Clarke, were overruled as to Otey's first three causes of action.

The State of Nebraska and the Board of Pardons were added as defendants in an amended petition filed July 5, 1991. The transcript reflects that the trial court, apparently on its own motion, considered that the demurrers filed on behalf of the defendants in response to Otey's original petition were deemed to apply to the State of Nebraska and the Board of Pardons as to Otey's amended petition. The demurrers were then overruled as to Otey's first three causes of action.

## OTEY'S AMENDED PETITION

In what Otey called the first cause of action of his amended petition, Otey alleged that Stenberg had prejudged Otey's commutation application and had acted as both a prosecutor and arbiter of Otey's claims, thereby violating Otey's rights to a "fair hearing," as guaranteed by the 8th and 14th Amendments to the U.S. Constitution and by article I, §§ 3 and 9, of the Nebraska Constitution.

In what Otey called his second cause of action, Otey alleged that the direction to the Board of Parole not to make a recommendation to the Board of Pardons regarding commutation deprived him of his rights under the Due Process and Equal Protection Clauses of the 14th Amendment to the U.S. Constitution and under article I, §§ 3 and 26, and article IV, § 13, of the Nebraska Constitution.

In what Otey called his third cause of action, he alleged that the direction by the Board of Pardons to the Board of Parole not to make a recommendation on the merits of Otey's commutation application deprived the Board of Parole of its constitutionally granted prerogative under article IV, § 13, of the Nebraska Constitution.

Demurrers filed in response to Otey's original petition were also deemed by the district court to apply to Otey's amended petition. The demurrers were sustained as to Otey's fourth cause of action, which alleged a violation of Nebraska's public meetings law, and that cause of action was dismissed by the district court.

## OTEY'S PRAYER

In the prayer of his amended petition, Otey asked, inter alia, for a temporary restraining order and for a temporary and a permanent injunction "prohibiting Defendants from killing Plaintiff until such time as he has received a new commutation hearing before a fair and unbiased board of clemency, complete with a recommendation on the merits of his commutation application by the Board of Parole, and further injunctive relief mandating such a hearing."

## FOUR DEFENDANTS' ANSWERS

In their respective answers to the amended petition, Nelson, Beermann, Stenberg, and Hopkins, inter alia, (1) challenged the district court's jurisdiction over the subject matter of Otey's amended petition; (2) claimed that Otey had waived any right to object to the composition of the Nebraska Board of Pardons and to request that one or more of the members of the board be disqualified; (3) claimed that by failing to object to the report of the Nebraska Board of Parole and by specifically failing to object to the report's failure to contain a recommendation at any time prior to the filing of the district court lawsuit, Otey had waived any challenges that he might have to said report and to its failure to contain a recommendation; (4) claimed that prior to filing his application for commutation Otey did not object to any members of the Nebraska Board of Pardons or request that any of the members be disqualified from hearing his application; (5) claimed that Otey made no objection to

Lindgren's participating in the hearing until after she had made an opening statement, (6) claimed that although Otey, at the beginning of Brown's and Lindgren's presentation, objected to their participation at the hearing because they were members of Stenberg's staff, *the objection was later withdrawn by Otey.*

Without explanation in the record, trial was had on Otey's petition, and judgment was entered by the trial court before the State of Nebraska and the Board of Pardons were required to file their answers. Otey's amended petition was filed July 5, 1991. In their brief, the State of Nebraska and the Board of Pardons acknowledge that they were served after the amended petition was filed. Under Neb. Rev. Stat. § 25-821 (Reissue 1989), those two defendants had 30 days after they were served in which to file an answer to Otey's amended petition. Since the amended petition was filed July 5, the State of Nebraska and the Board of Pardons could not have been served earlier than on that date. Because the 30th day fell on Sunday, the State of Nebraska and the Board of Pardons had until August 5 to file their answers. Trial was had on July 24, 1991, and the trial court entered its order including its injunction on July 31.

## TRIAL COURT'S FINAL ORDER

In its final order, the district court found it had jurisdiction to enter its injunction pursuant to Neb. Const. art. V, § 9, which grants equity jurisdiction to the district courts. The court stated that it was not reviewing the decision of the Board of Pardons nor the reasons given by members of the board for their decision. On appeal, the appellants, in their first two assignments of error, claim that the district court erred in finding that it had jurisdiction to review the actions of the Board of Pardons and in reviewing the actions of the Board of Pardons, in violation of article II, § 1, of the Nebraska Constitution.

## STANDARD OF REVIEW

In all appeals from the district court in suits in equity in which review of some or all of the findings of fact of the district court is asked by the appellant, it shall be the duty of the Court of Appeals or the Supreme Court to retry the issue or issues of fact involved in the finding or findings of

fact complained of upon the evidence preserved in the bill of exceptions and, upon trial de novo of such question or questions of fact, reach an independent conclusion as to what finding or findings are required under the pleadings and all the evidence without reference to the conclusion reached in the district court or the fact that there may be some evidence in support thereof.

Neb. Rev. Stat. § 25-1925 (Supp. 1991). See, also, *State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 477 N.W.2d 577 (1991). An action for injunction sounds in equity. *City of Newman Grove v. Primrose, ante* p. 70, 480 N.W.2d 408 (1992). Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. *Baker v. St. Paul Fire & Marine Ins. Co., ante* p. 14, 480 N.W.2d 192 (1992).

In Nebraska, as a matter of law, the judicial branch of government has no jurisdiction to review the granting or denial of clemency in a death sentence case by the Board of Pardons. Article IV, § 13, of the Nebraska Constitution states, in part, that "[t]he Governor, Attorney General and Secretary of State, sitting as a board, shall have power to remit fines and forfeitures and to grant respites, reprieves, pardons, or commutations in all cases of conviction for offenses against the laws of the state, except treason and cases of impeachment." We have long held that *the exercise of clemency authority "is not a right given for a consideration to the individual by the legislature, but a free gift from the supreme authority, confided to the chief magistrate, and to be bestowed according to his own discretion."* (Emphasis supplied.) *Pleuler v. The State*, 11 Neb. 547, 575, 10 N.W. 481, 489 (1881). See, also, *Campion v. Gillan*, 79 Neb. 364, 112 N.W. 585 (1907). At the time of that holding, the pardon powers were vested solely in the Governor. They are now vested in the Board of Pardons.

The separation of powers clause found in Neb. Const. art. II, § 1, reads:

The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power

properly belonging to either of the others, except as [otherwise] expressly directed or permitted.

This language "prohibits one branch of government from encroaching on the duties and prerogatives of the others or from improperly delegating its own duties and prerogatives." *State ex rel. Spire v. Conway*, 238 Neb. 766, 773, 472 N.W.2d 403, 408 (1991).

In *Conway*, we held that article II, § 1, precluded a state senator from simultaneously serving as an assistant professor at a state college. We noted that the Legislature is the sole judge of the qualifications of its members by virtue of Neb. Const. art. III, § 10, and that the Legislature had decided that the senator's position at the college did not prohibit him from taking his seat in the Unicameral. With regard to whether Conway could retain his legislative seat, we stated that the "principle of the separation of powers which is at the heart of this controversy prevents us from hearing a matter the determination of which the Constitution entrusts to another coordinate department, or branch, of government." *Conway*, 238 Neb. at 773, 472 N.W.2d at 408. The judicial branch has no authority to question the qualifications of the members of the Board of Pardons so long as they are the duly elected, qualified, and acting Governor, Secretary of State, and Attorney General of Nebraska. No issue has been raised that any of the board members were not the duly elected, qualified, and acting officials of their respective offices.

Article IV, § 13, of the Nebraska Constitution entrusts the clemency power exclusively in the executive branch of government. Accordingly, the judicial branch of government may not interfere with the Board of Pardons' exercise of that power.

In arguing their assignment of error that the district court erred in granting injunctive relief, the appellants challenge the authority of the district court for Lancaster County to enjoin the enforcement of a criminal conviction and sentence imposed by another district court, which conviction and sentence have been affirmed by this court. The defendants also argue that there was no real or imminent threat of execution to Otey on July 31, 1991, the date of the district court's final injunction.

This was because the three outstanding death warrants, one from this court, one issued by the Board of Pardons, and one of which we take judicial notice issued by the district court for Douglas County, had expired on or before July 1, 1991. We have found no statutory authority that would permit an executioner to carry out a death sentence at any time not set forth in a death warrant. Moreover, the U.S. Court of Appeals had, on June 30, enjoined Otey's execution. The federal appeals court's injunction was entered before the district court for Lancaster County had entered its temporary restraining order on July 2. The federal court's injunctive order was still in effect on the dates the district court for Lancaster County entered its other subsequent injunctive orders.

Nebraska statutes place authority to suspend the execution of a death sentence in the Nebraska Supreme Court or one of its judges and authority to commute a death sentence in the Board of Pardons. §§ 29-2544 and 29-2545. The district court originally imposing the death sentence may suspend a death sentence only in a case in which the convict is found to be mentally incompetent or pregnant. Neb. Rev. Stat. §§ 29-2537 and 29-2541 (Reissue 1989). We have found no statutory provision authorizing a nonsentencing district court to stay or suspend a death sentence imposed by another district court. We take judicial notice that not only did the Board of Pardons, after it denied Otey clemency, set the time and date for Otey's execution, but that it issued its warrant to the warden of the Nebraska State Penitentiary to carry out Otey's execution. We further take judicial notice that the Board of Pardons applied for and received from the clerk of the Douglas County District Court a death warrant directed to the warden to carry out Otey's execution. Since no issue as to Otey's competency was raised, any request for a stay of execution should have been made to Nebraska's Supreme Court or one of its members. §§ 29-2544 and 29-2545.

An injunction is an extraordinary remedy available in the absence of an adequate remedy at law and where there is a real and imminent danger of irreparable injury. *Grein v. Board of Education*, 216 Neb. 158, 343 N.W.2d 718 (1984). Unless it can be shown that reasonable grounds exist for apprehending that

absent the injunction the actions will be done, the injunction will be denied. *Id.* The Board of Pardons may set the time and date of execution only when it denies an application for the exercise of pardon authority. § 83-1,132. In this case, after denying Otey's commutation application on June 29, the Board of Pardons issued a death warrant which expired at 11:59 p.m. on July 1, the board ordered execution date. The clerk of the district court for Douglas County, at the request of the Board of Pardons, issued a death warrant directing that Otey's execution be carried out at the time set by the Board of Pardons. It too expired at 11:59 p.m., July 1. Once the time for Otey's execution had passed, the death warrants had no validity and the Board of Pardons had no authority to issue a new death warrant without denying a new application for commutation. Besides having no authority to enjoin Otey's execution, there was no reasonable basis on which the district court could find that Otey's execution would take place absent the injunction. Otey's request of the district court for an injunction should have been denied.

## DUE PROCESS CLAIMS

Otey claims that his due process rights under the federal and state Constitutions were violated during his commutation proceedings.

In the first three causes of action of his amended petition, Otey basically complains that he was denied due process, i.e., a "fair hearing" under the 8th and 14th Amendments to the U.S. Constitution and under article I, §§ 3 and 9; article I, §§ 3 and 26; and article IV, § 13, of Nebraska's Constitution. Otey made no argument under the Eighth Amendment, and we will not consider whether the Eighth Amendment is applicable here. See *State v. Moss, ante* p. 21, 480 N.W.2d 198 (1992).

With regard to the actions of the Board of Pardons in the exercise of its power to grant commutations, we have held that "[t]he exercise or nonexercise of a discretionary power to grant clemency is not subject to ordinary due process requirements." *Whited v. Bolin*, 210 Neb. 32, 35, 312 N.W.2d 691, 693 (1981) (citing *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979)).

An examination of federal case law in the context of prisoner's rights indicates that a clemency decision of the Nebraska Board of Pardons does not implicate any interest protected by the Due Process Clause. We embrace the principles established in *Greenholtz v. Nebraska Penal Inmates, supra,* and its progeny. In *Greenholtz,* the U.S. Supreme Court held that a reasonable entitlement to due process is not created merely because a state provides for the *possibility* of parole. Rather, the existence of a liberty interest may depend on the wording of the state statutes. *Id.* The Nebraska statute examined in *Greenholtz* specified that an individual *shall* be paroled *unless* release should be deferred for one of four specified reasons. The Court concluded that this language in the statute created a protectable expectancy of parole. *Id.*

Citing *Greenholtz,* the U.S. Supreme Court, in *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 464, 101 S. Ct. 2460, 69 L. Ed. 2d 158 (1981), noted that "[u]nlike probation, pardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review." The Connecticut statute in question granted "unfettered discretion" to its pardons board and, "having no definitions, no criteria, and no mandated 'shalls', create[d] no analogous duty or constitutional entitlement." 452 U.S. at 466. The U.S. Supreme Court stated that

> [i]n terms of the Due Process Clause, a Connecticut felon's expectation that a lawfully imposed sentence will be commuted or that he will be pardoned is no more substantial than an inmate's expectation, for example, that he will not be transferred to another prison; it is simply a unilateral hope.

*Id.* at 465. The U.S. Supreme Court held that the Connecticut statute conferred no rights on its inmates "beyond the right to seek commutation." *Id.* at 467.

In sum, a state creates a protected liberty interest through the use of " 'explicitly mandatory language' " in connection with the establishment of " 'specified substantive predicates' " to limit discretion. *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 463, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989).

See, also, *Dace v. Mickelson*, 816 F.2d 1277 (8th Cir. 1987); *Parker v. Corrothers*, 750 F.2d 653 (8th Cir. 1984).

An examination of the Nebraska Constitution and statutes governing the exercise of pardon authority reveals that, in relevant part, the Board of Pardons "shall":

1. Consult with the Board of Parole concerning applications for the exercise of pardon authority. Neb. Rev. Stat. § 83-1,127(4) (Reissue 1987).

2. Consider an application with or without a hearing by the board at its next regular meeting or within 30 days, whichever is earlier. If a hearing is held, it shall be conducted in an informal manner, but a complete record of the proceedings shall be made and preserved. Neb. Rev. Stat. § 83-1,129(2) (Reissue 1987).

3. After consideration of the application, and after such further investigations as it may deem appropriate, either grant or deny the relief requested, or grant such other relief as may be justified. Neb. Rev. Stat. § 83-1,130(1) (Reissue 1987).

In addition, § 83-1,132 provides that

> [w]henever an application for exercise of the pardon authority is filed with the secretary of the Board of Pardons by a committed offender who is under a sentence of death, the sentence shall not be carried out until the board rules upon such application. If the board denies the relief requested it may set the time and date of execution and refuse to accept for filing further applications from such offender.

Before the June 6, 1991, meeting of the Board of Pardons, the internal policies and procedures of the Board of Pardons were essentially a restatement of these statutes. Because there were virtually no procedures set forth which were specific to death penalty cases, and because no member of the Board of Pardons had ever presided over such a case, the purpose of the June 6 meeting was to promulgate procedures for capital cases.

In accord with federal case law, there are no provisions in Nebraska's Constitution or in its statutes creating a liberty interest in commutation hearings other than the right to file an application for commutation. Nor do the procedures agreed upon by the Board of Pardons at its June 6 meeting create a liberty interest. There are no "substantive predicates" which

limit the Board of Pardons' discretion in granting commutations, i.e., no specific criteria which an applicant must meet to earn a commutation from the Board of Pardons, no conditions which must first be met, no specific conduct which the applicant must have avoided, no guidelines of any kind which must be followed by the board. In short, the Nebraska Board of Pardons has the unfettered discretion to grant or deny a commutation of a lawfully imposed sentence for any reason or for no reason at all.

A review of Nebraska's Constitution, statutes, and procedures reveals that no right has been conferred upon Otey beyond the right to seek a commutation. He was afforded this right. Having followed its own procedures in granting him a hearing, having consulted with the Board of Parole, and having considered Otey's application, the Board of Pardons fulfilled any obligation it had to Otey. Neither the federal nor Nebraska Constitution requires more.

## PARTICIPATION OF
## ASSISTANT ATTORNEYS GENERAL

Although Otey was not entitled to any due process rights at his clemency hearing, we will, nonetheless, examine the district court's finding that Otey was denied a fair hearing through the participation of Assistant Attorneys General Lindgren and Brown, which Otey claims resulted in Attorney General Stenberg acting as both prosecutor and arbiter of Otey's claims.

In his appeal brief, Otey does not argue that Stenberg should have been disqualified from participation at his Board of Pardons hearing. Rather, Otey argues that

> [i]t is the position on the merits of [Otey's] plea taken by Brown and Lindgren, *in the name of the State and on the express orders of the Attorney General*, coupled with the Attorney General's intensive efforts to slant the Pardons Board's procedures to Mr. Otey's disadvantage, that offends due process.

(Emphasis in original.) Brief for appellee at 40.

At his commutation hearing, Otey, in substance, made a similar complaint. He subsequently withdrew the complaint after assurances by Governor Nelson that the Board of Pardons

would not be unduly prejudiced by "adversarial" argument. In a legal proceeding, when a litigant makes an objection and then withdraws it, upon appeal, the litigant will not be heard to complain of error in that regard. See *Chief Indus. v. Hamilton Cty. Bd. of Equal.*, 228 Neb. 275, 422 N.W.2d 324 (1988). There is no reason why this procedural bar should not apply to commutation hearings, assuming arguendo that Otey had any right whatsoever to complain about Lindgren's and Brown's participation in the commutation proceedings.

Again assuming arguendo that Otey had a right to a commutation hearing without the participation of Lindgren and Brown, an issue we need not decide, Otey has not shown that he was prejudiced as a result of their participation. Otey does not complain about the substance of the presentation made by Lindgren and Brown. At oral argument before this court, Otey conceded that the State's presentation before the pardon board contained no false statements. No allegation is made that any evidence or testimony presented by the State could not have been otherwise obtained by the board pursuant to its subpoena power under Neb. Rev. Stat. § 83-1,128 (Cum. Supp. 1990). Because Nebraska's Constitution makes no provision for a replacement for a Board of Pardons member under any circumstance, had Attorney General Stenberg recused himself from the hearing, the resulting 1 to 1 vote of the remaining members of the Board of Pardons would have nonetheless denied Otey commutation of his death sentence.

Otey has not pointed to the commutation proceedings record where he requested that Stenberg disqualify himself as a member of the Board of Pardons. Our examination of that record has failed to disclose any such request. Therefore, Otey was procedurally barred from raising any issue on that point in the district court. See *ConAgra, Inc. v. Cargill, Inc.*, 223 Neb. 92, 388 N.W.2d 458 (1986).

## EQUAL PROTECTION

Otey also complained that his federal and state constitutional rights to equal protection of the law were violated by the Board of Pardons' allegedly ordering the Board of Parole not to make a recommendation as to commutation.

The district court found that the direction to the Nebraska Board of Parole not to make a recommendation (1) violated Otey's "right to be treated the same as others similarly situated in connection with his commutation application," apparently in violation of the Equal Protection Clauses of the U.S. and Nebraska Constitutions, and (2) "deprived the Board of Parole of its constitutionally granted prerogative and deprived [Otey] of the benefit of any recommendation the Nebraska Board of Parole may have made." These findings were in error.

The chairperson of the Board of Parole, Bartee, testified in the district court that he could not recall another case in which the Board of Pardons had directed the Board of Parole to not make a recommendation. At the commutation hearing, a transcript of which was introduced at the district trial, Beermann stated that the request was an "unusual step." Apparently it was standard procedure *in past noncapital crime* commutation applications for the Board of Parole to give a recommendation. The record does not support Otey's contention that a request of the Board of Pardons, if any, violated his right to equal protection. Neither Bartee nor Beermann, who have served in their positions for 7 and 21 years, respectively, had ever had experience with a death penalty case. More importantly, Bartee's district court testimony repeatedly reflects that the Board of Parole does not handle commutation applications in death penalty cases or in cases such as Otey's, where an application is submitted to the Board of Pardons by the offender himself. To the following questions, Bartee gave the following answers:

Q. . . . You have previously testified that Mr. Otey's application was one that he filed just as an individual without previously receiving a Board of Parole recommendation; is that correct?

A. That's correct.

Q. In that situation, was it unusual that the Board of Parole did not make a recommendation?

A. No, it was not.

Q. [I]n that situation, was it contrary to the ordinary practice for the Board of Parole to not make a recommendation on Mr. Otey's commutation appli-

cation?

A. No, it was not.

Q. Would it be correct to say that it would have been unusual for the Board of Parole to have made a recommendation on an application such as Mr. Otey's?

A. That would be correct.

The trial court erred in finding a violation of Otey's "right to be treated the same as others similarly situated." In any event, by the nature and severity of the crimes involved, there is a substantial and rational basis for treating commutations in capital cases differently from commutations in noncapital cases.

Article IV, § 13, of the Nebraska Constitution provides, in part, that "[t]he Board of Parole *may* advise the Governor, Attorney General and Secretary of State on the merits of any application for remission, respite, reprieve, pardon or commutation but such advice shall not be binding on them." (Emphasis supplied.) The Legislature has determined that the Board of Parole is within the Board of Pardons for administrative purposes only and that "[n]othing in this act shall be construed to give the . . . Board of Pardons any authority, power, or responsibility over the [parole] board, its employees, or the exercise of its functions under the provisions of this act." Neb. Rev. Stat. § 83-188 (Reissue 1987). Because there is indeed a constitutional prerogative given to the Board of Parole to advise the Board of Pardons, which prerogative is reinforced by the language of § 83-188, the Board of Parole's acquiescence to the request of Beermann was a discretionary choice on the part of the Board of Parole. Thus, the Board of Pardons could not and did not deprive the Board of Parole of its prerogative to make a recommendation. The Board of Parole could have made a recommendation had it been so inclined regardless of any request or direction by a member of the Board of Pardons or by the Board of Pardons acting in its corporate capacity. The directive to not make a recommendation came from Beermann, not from the Board of Pardons in its corporate capacity. Beermann admitted at the district court trial that he had not consulted with the other two members of the Board of Pardons in making what has been

labeled his "direction."

The constitutional prerogative of the Board of Parole to advise the Board of Pardons on the merits of an application for commutation of an offender's death sentence does not give the offender a right to require the Board of Parole to make a recommendation to the Board of Pardons. The trial court was in error in requiring the Board of Parole to make a recommendation in Otey's case. To show that he was prejudiced by the Board of Parole's failure to make a recommendation, Otey would have to make a showing (1) that but for Beermann's request or direction to Bartee, the Board of Parole, by corporate action, would have made a favorable recommendation for commutation of Otey's death sentence and (2) that the Board of Pardons would have followed that recommendation. There is nothing in the record reflecting that the Board of Parole as a corporate entity would make a favorable recommendation for commutation of Otey's sentence, nor is there anything in the record to show that the Board of Pardons would follow such a recommendation. As previously stated, it was customary for the Board of Parole *not* to make a recommendation when an individual filed an application for commutation. Moreover, by failing to object to the report of the Nebraska Board of Parole and by specifically failing to object to the report's failure to contain a recommendation at any time prior to the filing of the district court lawsuit, Otey waived any challenges he might have had to the Board of Parole report and to its failure to contain a recommendation. He thus was procedurally barred from raising these issues in the district court. See *Chief Indus. v. Hamilton Cty. Bd. of Equal.*, 228 Neb. 275, 422 N.W.2d 324 (1988).

## CROSS-APPEAL

### PUBLIC MEETINGS ACT

Having found no legal infirmity in the actions of the Board of Pardons or its proceedings, we now address Otey's assignments of error on cross-appeal. Otey claims the district court erred in overruling his motion for leave to file a second amended petition, which would have added a fourth cause of

action alleging that the June 6, 1991, meeting of the Board of Pardons violated Nebraska's public meetings law, Neb. Rev. Stat. § 84-1408 et seq. (Reissue 1987 & Cum. Supp. 1990). The motion to amend was filed July 22, 1991, and denied by the court on July 23, 1991, the day before the trial.

"The court may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, [permit a party to] amend any pleading, process or proceeding, by . . . inserting other allegations material to the case . . . ." Neb. Rev. Stat. § 25-852 (Reissue 1989). The statute is to be liberally construed so as to prevent a failure of justice. *Nebraska Equal Opp. Comm. v. State Emp. Retirement Sys.*, 238 Neb. 470, 471 N.W.2d 398 (1991). Thus, the decision to grant or deny an amendment to a pleading rests in the discretion of the court. *Id.*

In any event, Otey's public meetings law complaint is procedurally barred by this court's prior holdings. Otey's complaint that a published notice did not show that the procedures in connection with Otey's commutation hearing would be considered at the June 6 hearing borders on the frivolous. Otey's counsel, in his letters of May 24 and May 30, asked for a discussion of the procedures to be used in Otey's commutation hearing and for special consideration as to the time for filing Otey's application. The record reflects that Brown gave personal notice of the June 6 meeting to Otey's counsel, Covalt, through a telephone call to Covalt's secretary on May 31 and a letter to Covalt dated the same day. Covalt appeared and participated in the June 6 meeting. He made no objection concerning any deficiency in the public notice as to the agenda. With regard to an alleged violation of the public meetings law, we have said:

"Any person who has notice of a meeting and attends the meeting should be [and is] required to object specifically to the lack of public notice at the meeting, or be held to have waived his right to object on that ground at a later date. A timely objection will permit the public body to remedy its mistake promptly and defer formal action until the required public notice can be given. . . ."

*Witt v. School District No. 70*, 202 Neb. 63, 67, 273 N.W.2d 669, 672 (1979) (quoting *Alexander v. School Dist. No. 17*, 197

Neb. 251, 248 N.W.2d 335 (1976)). Having made no objection at the June 6 hearing concerning a lack of sufficient public notice, Otey cannot now complain of a violation of the public meetings law. The record reflects that notice of the June 6 meeting was published in newspapers in Lincoln and Omaha.

### REFUSAL TO ALLOW ATTORNEYS AS WITNESSES

Otey also claims that the district court erred in refusing to disqualify Brown and Lindgren as attorneys for the State and in precluding their testimony at trial. The district court overruled Otey's motion to disqualify Brown and Lindgren, ruling that "[t]here is not a sufficient showing that [they] are necessary witnesses." For the same reason, the district court refused to allow Brown and Lindgren to testify when called as witnesses for Otey and refused to admit their depositions into evidence. The trial court, after reviewing the deposition testimony of Brown and Lindgren, stated, "I don't believe that that testimony really adds to the record that is already before the Court in the form of the record made before the hearing . . . ."

While conceding that the record is sufficient with regard to other issues, Otey argues that

> the testimony of Mr. Brown and Ms. Lindgren was the best evidence available that (1) Attorney General Stenberg and Mr. Brown orchestrated procedural changes by the Board relating to the expected hearing on Mr. Otey's commutation application and for the purpose of prejudicing Mr. Otey's chance for a commutation; (2) that Attorney General Stenberg directed, knew the substance of, and participated in preparation of the State's presentation in opposition to Mr. Otey's application; and (3) Mr. Brown and Ms. Lindgren were, in fact, acting as State prosecutors in their appearance before the Board of Pardons.

Brief for appellee on cross-appeal at 75.

"[R]elevant, evidence may be excluded [by a trial court] if its probative value is substantially outweighed by . . . considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Neb. Rev. Stat. § 27-403 (Reissue 1989). The depositions of Brown and Lindgren,

received by the court only as offers of proof, contain no evidence that Attorney General Stenberg orchestrated procedural changes for the purpose of prejudicing Otey's chance for a commutation. Lindgren's and Brown's deposition testimony relating to Stenberg's knowledge or participation in the presentation made on behalf of the State at the commutation hearing is cumulative to that already in the record, as is the testimony relating to the role of Brown and Lindgren at the commutation hearing. The trial court properly acted within its discretion in disallowing the testimony of Brown and Lindgren, in refusing to disqualify them as counsel, and in refusing to admit their depositions in evidence.

## CONCLUSION

The district court erred in enjoining Otey's execution. A commutation decision of the Nebraska Board of Pardons, a discretionary act of grace from the executive branch, does not trigger the requirements of the Due Process Clause. In a death penalty case in Nebraska, it is the judicial branch of government that sentences a convicted felon to death. It is during the judicial procedure that a defendant is entitled to the full panoply of due process rights. In Nebraska, commutation of a death sentence by the State is purely a matter of grace exercised by the executive branch, and no due process rights are available to the applicant. Commutation is the giving back of an offender's life, which has been taken away by due process in the state's judicial process. In seeking clemency, the offender can expect only the right to make an application for clemency. In this state, the Board of Pardons has unfettered discretion to grant or deny clemency. There was no infringement on Otey's equal protection rights, nor any other state or federal constitutional infirmity in connection with Otey's commutation proceedings.

The judgment of the district court is reversed, its injunction is dissolved, and the district court is ordered to dismiss Otey's petition. Since all of the death warrants have expired and since it was this court that on March 19, 1991, issued the death warrant which was stayed by operation of law when Otey made his application for clemency to the Board of Pardons, any

further application for a death warrant should be filed with this court.

REVERSED AND REMANDED WITH DIRECTIONS.