**Harold Lamont OTEY, Appellee,**

v.

**Frank X. HOPKINS, Warden of the Nebraska Penal and Correctional Complex, Appellant.**

**No. 92–2733.**

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 4, 1992.

Decided Aug. 4, 1992.

---

211

James R. Mowbray and Dorothy A. Walker, Lincoln, Neb., argued, for appellant.

J. Kirk Brown and Donald Andrew Kohtz, Lincoln, Neb., argued, for appellee.

Before JOHN R. GIBSON, BOWMAN and MAGILL, Circuit Judges.

**1.** The Honorable Warren K. Urbom, Senior United States District Judge for the District of Nebraska.

JOHN R. GIBSON, Circuit Judge.

Harold Otey is scheduled for execution August 6, 1992, and the district court[1] has stayed execution to permit consideration of a petition for writ of habeas corpus raising new issues. Order of July 30, 1992. A motion to vacate the stay of execution is before us, and we deny the motion.

Otey's petition for writ of habeas corpus is directed to the commutation hearing before the Nebraska Board of Pardons conducted in June 1991. The Board of Pardons denied commutation by a vote of two to one. Otey attacked the commutation proceedings in state court. The Nebraska Supreme Court ruled against him in *Otey v. State of Nebraska,* 240 Neb. 813, 485 N.W.2d 153 (1992), which was filed on May 29, 1992. The Nebraska Supreme Court held that in Nebraska as a matter of law the judicial branch has no jurisdiction to review the granting or denial of clemency in a death sentence case by the Board of Pardons, 485 N.W.2d at 163, and further held that the clemency decision by the Nebraska Board of Pardons did not implicate any interest protected by the due process clause of the federal or state constitutions. *Id.* at 167.

The petition claims constitutional violations in that the attorney general participated in conflicting capacities in the Board of Pardons proceedings, acting simultaneously as prosecutor and witness before that Board; sitting as a decisionmaker on the Board; and directing the Nebraska Board of Parole not to make a recommendation to the Nebraska Board of Pardons. The district court denied the state's motion to dismiss on the ground that Otey's claims are not properly the subject of a petition for habeas corpus under 28 U.S.C. § 2254 (1988). The court reasoned that a habeas petition may attack executive restraints on liberty, including a parole board's decision and a decision of the executive branch of government with respect to insanity, citing *Peyton v. Rowe,* 391 U.S. 54, 58, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); *Harris v. Nel-*

son, 394 U.S. 286, 291, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969); *Burnside v. White,* 760 F.2d 217, 219 (8th Cir.), *cert. denied,* 474 U.S. 1022, 106 S.Ct. 576, 88 L.Ed.2d 559 (1985); and *Ford v. Wainwright,* 477 U.S. 399, 410–12, 106 S.Ct. 2595, 2602–03, 91 L.Ed.2d 335 (1986). Order of July 30, 1992, slip op. at 2–3.

The district court, in considering the application for stay of execution, concluded that the unusual constitutional issues required more thorough examination than could be given before the scheduled execution date of August 6, not only because the legal issues are new, but because the record is not yet fully developed. *Id.* at 5–6. The district court stated that it was apparent that an evidentiary hearing may be necessary, that the claims are not frivolous, and under this court's standard in *Mercer v. Armontrout,* 864 F.2d 1429, 1431–32 (8th Cir.1988), a stay was required in order to give the necessary careful study to the constitutional issues raised. Order of July 30, 1992, slip op. at 5–6.

Hopkins' reliance on *Bundy v. Wainwright,* 808 F.2d 1410 (11th Cir.1987), with its recitation of the four factors to be considered in granting a stay, 808 F.2d at 1421, is unavailing. The holding in *Bundy* is directly contrary to Hopkins' position. *Bundy* demonstrates that nothing in *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), which deals primarily with stays in the courts of appeal, alters the pleading obligations for habeas cases set out in the rules governing section 2254 cases. 808 F.2d at 1421. Here, the district court has rejected summary dismissal as provided for in Rule 4 of the section 2254 rules, has found the claim is not frivolous, and has ordered the parties to brief the question of whether a hearing is necessary. Order of July 30, 1992, slip op. at 5–6.

■ As the issues raised in this case arise from proceedings in June 1991, it is evident that the petition raises a claim that is neither successive (i.e., it has not been raised before), nor abusive (i.e., it does not raise grounds that were available but ignored in an earlier petition). Thus, the concerns expressed in *Delo v. Stokes,* 495 U.S. 320, 110 S.Ct. 1880, 109 L.Ed.2d 325 (1990), and the cause and prejudice analysis in *McCleskey v. Zant,* —— U.S. ——, —— ——, 111 S.Ct. 1454, 1470–75, 113 L.Ed.2d 517 (1991), are not applicable.

■ Hopkins and the dissent argue that Otey's claims are foreclosed by *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981). It is first interesting to note that Hopkins filed no response in the district court within the time allotted by local rules or before the district court entered its order granting the stay now before us. *Dumschat* was raised only in the motion for reconsideration. *Dumschat* states that "[a] state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right." 452 U.S. at 463, 101 S.Ct. at 2464. *Dumschat* dealt with a very limited argument that there was an expectation of actually receiving a commutation and the state had to explain its reasons for denying the commutation. Otey's argument is far different as it is based on the expectation of receiving a meaningful commutation process, which he argues was denied him by the actions of the Attorney General. The district court order states only that this is a claim that is not frivolous and must be thoughtfully and fully considered. We reject the argument that *Dumschat,* with its differing facts, requires us to vacate the stay, enter a decision on the merits in favor of Hopkins, and permit execution of Otey.

As the district court aptly stated, this case involves unusual constitutional issues requiring development of a factual record, and an evidentiary hearing may well be necessary. Order of July 30, 1992, slip op. at 5–6. Because we do not deal with a successive or abusive petition, and the district court has made a clear statement that the claims are not frivolous, a stay is required to fully and diligently consider the issues raised. *Mercer,* 864 F.2d at 1431–32. The district court set a schedule for the parties to file briefs on August 12 and 19, 1992, to be followed by an August 28, 1992, conference regarding issues and pro-

cedures. Slip op. at 6–7. It is evident that the court is giving this new petition expedited consideration.[2] We can anticipate that the experienced district judge will issue a decision with due dispatch.

To vacate the stay would require summary disposition of issues the district court has held to be not frivolous and to require development of a record. When human life is at stake, we would be derelict in our judicial duty to so rule. *Mercer,* 864 F.2d at 1431–32.

The motion to vacate the stay is denied.

BOWMAN, Circuit Judge, dissenting.

I would grant the motion to vacate the stay of execution, and therefore I respectfully dissent.

This is Otey's third federal habeas petition. He does not challenge the validity of his conviction or sentence. Rather, he attacks only the Nebraska commutation proceeding that resulted in the denial of his request for commutation of his death sentence to a sentence of life imprisonment. The District Court, and a majority of this panel, believe a stay is required so that unspecified facts regarding Otey's claims may be developed. Before deciding whether a factual record needs to be developed, however, we must first address the threshold question, which is a purely legal issue: Does the Due Process Clause apply to the Nebraska commutation proceeding? The answer to this question is no.

"The Governor, Attorney General and Secretary of State, sitting as a board, shall have power to ... grant ... commutations in all cases of conviction for offenses against the laws of the state, except treason and cases of impeachment." Neb. Const., art. IV, § 13. In the words of the Nebraska Supreme Court,

> [i]n Nebraska, as a matter of law, the judicial branch of government has no jurisdiction to review the granting or denial of clemency in a death sentence case by the Board of Pardons. Article IV, § 13, of the Nebraska Constitution states, in

part, that "[t]he Governor, Attorney General and Secretary of State, sitting as a board, shall have power to remit fines and forfeitures and to grant respites, reprieves, pardons, or commutations in all cases of conviction for offenses against the laws of the state, except treason and cases of impeachment." We have long held that the exercise of clemency authority "is not a right given for a consideration to the individual by the legislature, but a free gift from the supreme authority, confided to the chief magistrate, and to be bestowed according to his own discretion."

> . . . . .

> In short, the Nebraska Board of Pardons has the unfettered discretion to grant or deny a commutation of a lawfully imposed sentence for any reason or for no reason at all.

> A review of Nebraska's Constitution, statutes, and procedures reveals that no right has been conferred upon Otey beyond the right to seek a commutation. He was afforded this right.

*Otey v. State,* 485 N.W.2d 153, 163, 166 (Neb.1992) (emphasis and citations omitted) (per curiam). This discretionary, standardless executive power does not give rise to due process protections to those who wish to have their commutation request granted. The Supreme Court said as much in *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 466–67, 101 S.Ct. 2460, 2465–66, 69 L.Ed.2d 158 (1981):

> [The] commutation statute, having no definitions, no criteria, and no mandated "shalls," creates no analogous duty or constitutional entitlement.... [T]he mere existence of a power to commute a lawfully imposed sentence, and the granting of commutations to many petitioners, create no right or "entitlement." ... We hold that the power vested in the [Board of Pardons] to commute sentences conferred no rights on respondents beyond the right to seek commutation.

Otey does not claim that he was denied the right to seek commutation; only that

---

2.  Otey's petition was filed June 16, 1992, and the district court issued its order July 30, 1992. The district court denied a motion for reconsideration on August 3, 1992.

the commutation process was flawed. However, Nebraska's commutation procedures do not "trigger[ ] the requirements of Fourteenth Amendment procedural due process." *Spinkellink v. Wainwright*, 578 F.2d 582, 619 (5th Cir.1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979);[1] *see also Bundy v. Dugger*, 850 F.2d 1402, 1424 (11th Cir.1988) (no liberty interest present when clemency decision "is wholly a matter of executive discretion"), *cert. denied*, 488 U.S. 1034, 109 S.Ct. 849, 102 L.Ed.2d 980 (1989); *Artway v. Pallone*, 672 F.2d 1168, 1180–81 (3rd Cir.1982) (standards for parole eligibility do not trigger Due Process protections).[2] Since Otey's claims are not the proper subject of a habeas petition, an evidentiary hearing or further factual development of any kind is unnecessary, and the motion to vacate the stay of execution should be granted.

---

1. The issue decided in *Spinkellink v. Wainwright*, 578 F.2d 582 (5th Cir.1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979), is virtually identical to the one presented here. In both instances, the state constitution conferred an unfettered right to the executive branch to grant clemency, and the habeas petitioner challenged the denial of clemency because, inter alia, the state attorney general defended the underlying death sentence and served in the clemency review process. In *Spinkellink*, the Fifth Circuit held that clemency decisions which are not statutory rights but acts of grace do not implicate any liberty interests within the meaning of the Due Process Clause. *Spinkellink*, 578 F.2d at 618–19.

2. The cases cited by the majority are inapposite. *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), and *Burnside v. White*, 760 F.2d 217 (8th Cir.), *cert. denied*, 474 U.S. 1022, 106 S.Ct. 576, 88 L.Ed.2d 559 (1985), were both habeas challenges to state executive proceedings that were governed by statutory standards limiting the decision-maker's discretion. *Harris v. Nelson*, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969), and *Peyton v. Rowe*, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968), involved habeas challenges to state judicial proceedings.