In the Matter of VICTOR LICITRA, Respondent, v THOMAS A. COUGHLIN, III, as Commissioner of the Department of Correctional Services, Appellant.

Third Department, May 5, 1983

APPEARANCES OF COUNSEL

*Robert Abrams*, Attorney-General (*Frederick R. Walsh* and *William J. Kogan* of counsel), for appellant.

*Lois Goland* and *David Leven* for respondent.

**OPINION OF THE COURT**

MAHONEY, P. J.

Petitioner was convicted of manslaughter in the second degree in Westchester County Court and sentenced, on May 19, 1976, to an indeterminate term of imprisonment of 5 to 15 years. After crediting petitioner with time spent in a local jail prior to his conviction, respondent calculated that petitioner's minimum period of imprisonment would end on March 15, 1981, his maximum period would end on March 15, 1991, and his conditional release date would be March 15, 1986.

Petitioner was successful in appealing his judgment of conviction to the Appellate Division, Second Department. On May 1, 1978, that court reversed his conviction on the law and, since it found the evidence insufficient to sustain a conviction for second degree manslaughter or any lesser included offense, dismissed the indictment (*People v Licitra*, 63 AD2d 654). The case was remitted to the trial court for the purpose of entering an order pursuant to CPL 160.50 and petitioner was unconditionally released from the Ossining Correctional Facility on May 4, 1978.

On appeal of the Appellate Division's order by the People, the Court of Appeals reversed on July 9, 1979 and remitted the case to the Second Department for review of the facts (*People v Licitra*, 47 NY2d 554). A bench warrant for petitioner's arrest was issued on August 17, 1979. The Appellate Division, upon learning that petitioner had not yet surrendered to authorities, gave him 10 additional days to surrender. When he still failed to do so, the Second Department dismissed petitioner's appeal on September 18, 1979. Several months later, on December 12, 1979, petitioner was arrested on an unrelated charge of driving while intoxicated. He was ultimately convicted, sentenced to 60 days in the Westchester County Jail, and returned to respondent's custody at the Ossining Correctional Facility on April 4, 1980.

These events led petitioner to request a recalculation of his release dates. Although petitioner was not a prisoner in the State prison system from May 4, 1978 until April 4, 1980, he was given credit for the 114-day period between December 12, 1979 and April 4, 1980 when he was incarcerated in the Westchester County Jail. Respondent did not, however, credit petitioner for the period between May 4, 1978 through December 11, 1979 when he was not in custody. This determination had the effect of moving back all of petitioner's expected release dates by one year, seven months and five days upon respondent's recalculation. Contending that he should have been given credit for the entire period of time at issue, petitioner commenced the instant CPLR article 78 proceeding. Special Term agreed with petitioner and, relying on the case of *Matter of Green v Hammock* (70 AD2d 226), directed that petitioner be cred-

ited for the time he spent out of prison following reversal of his conviction by the Second Department. This appeal by respondent ensued.

CPL 430.10 provides: *"Except as otherwise specifically authorized by law,* when the court has imposed a sentence of imprisonment and such sentence is in accordance with law, such sentence may not be changed, suspended or interrupted once the term or period of the sentence has commenced" (emphasis added). Since petitioner's sentence had commenced prior to the time he was released from custody on May 4, 1978, it must be determined whether that sentence was validly interrupted. We agree with respondent's contention that the reversal of petitioner's conviction and dismissal of the indictment by the Appellate Division constituted an action "otherwise specifically authorized by law" which did not prevent interruption of the sentence, since that court was specifically acting within its statutorily conferred powers as authorized by CPL 470.15 (subd 3) (see Preiser, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 430.10, p 169).

This conclusion is not inconsistent with our prior decision in *Matter of Green v Hammock (supra),* the case relied upon by Special Term in granting the petition. *Green* involved the question of whether there was a valid interruption of a prisoner's sentence pursuant to CPL 430.10 when he had mistakenly been released from jail pursuant to a habeas corpus order after challenging the parole board's refusal to set a minimum for his sentence. This court, in reversing the relief granted by Special Term upon finding that the Parole Board improperly refused to set the prisoner's minimum sentence, had noted that "the remedy consistent with parole denial is not release of the prisoner-relator, but a judgment directing the Board of Parole to perform its statutory duty" (*Matter of Greene v Smith* (52 AD2d 292, 294, app dsmd 40 NY2d 826). Thus, when the Parole Board refused to credit Green for the period of time he was out of prison pursuant to Special Term's habeas corpus order prior to reversal by this court, we affirmed an order directing that he be credited for such time (*Matter of Green v Hammock,* 70 AD2d 226, *supra).* Noting that CPL

430.10 was "intended to protect the defendant from arbitrary interruption of his time served by events over which he had no substantial control", we ruled that the failure to credit Green for the time he was out of jail would have the effect of penalizing him for a mistake made by the court (*supra,* at p 227).

In the instant case, petitioner's release from prison subsequent to the commencement of his sentence was not due to either an event over which he had no substantial control or a mistake made by the court. Rather, petitioner availed himself of the mechanism for challenging his conviction and the Second Department, after agreeing with petitioner's argument that the evidence was legally insufficient to support a conviction, implemented the appropriate remedy and dismissed the indictment. Petitioner's release from the State prison system at that point was proper since there was no basis for any further detention. Thus, unlike the situations found in *Matter of Green v Hammock (supra)* and the cases cited therein, in which prisoners were credited for time spent out of jail when their respective releases resulted from unauthorized actions, petitioner in this case was properly released from prison pursuant to statute once the Appellate Division reversed the judgment of conviction and dismissed the indictment. The fact that the Appellate Division's legal ruling concerning the sufficiency of the evidence was ultimately reversed by the Court of Appeals does not make petitioner's earlier release the product of unauthorized action by a court or administrative agency.

However, it does not automatically follow that petitioner should be denied credit for the entire period of time he was out of jail merely because his initial release may have been "specifically authorized by law" (CPL 430.10). Petitioner argues that, even if his sentence was validly interrupted by the Second Department's action in reversing his judgment of conviction, it resumed running when the Appellate Division's order was reversed by the Court of Appeals.

Petitioner, when released from Ossining Correctional Facility on May 4, 1978, was neither requested nor under any obligation to inform authorities of his whereabouts. Having been given his unconditional freedom, there is nothing in the record to indicate that petitioner was even

aware that the case was being considered by the Court of Appeals. Even if he was aware that the People's application for leave to appeal had been granted, he was certainly under no legal duty to follow the progress of that appeal. Thus, unless some duty is found whereby the People were obligated to secure petitioner's appearance once the Court of Appeals cast a shadow upon his continued right to freedom, the undischarged portion of a criminal sentence could be indefinitely suspended until, as happened in this case, a defendant is fortuitously taken into custody at some future date.

Although no statutory authority on point can be found, an analogous statute lends support to petitioner's contention. CPL 460.50 (subd 5), which deals with defendants at liberty during the pendency of an appeal as a result of orders releasing them on bail or their own recognizance, affirmatively requires the local criminal court upon affirmance of a defendant's conviction to "promptly direct the defendant to surrender himself to the criminal court in order that execution of the judgment be commenced or resumed". This provision, in the absence of any statutory authority covering the instant situation, should be construed to impose a similar duty upon reversal by the Court of Appeals of an intermediate appellate court's order allowing a defendant to be set free (see *Matter of Holland v La Vallee,* 63 AD2d 989, 990, mot for lv to app den 45 NY2d 710; see, also, *Matter of Hooray v Cummings,* 89 AD2d 790).

A defendant whose sentence resumes running upon reversal by the Court of Appeals in a case similar to this will not be allowed to escape confinement by hiding from the authorities until his sentence has run. The sentence will resume running only until such time as the State exercises due diligence under the circumstances in attempting to return the defendant to custody. In the case at bar, the record is devoid of any documentation indicating that attempts were made to locate petitioner or direct him to surrender prior to his December 12, 1979 arrest on the charge of driving while intoxicated. Petitioner is, therefore, entitled to credit against his sentence for the entire period of time between the entry of the order of the Court of

Appeals on July 9, 1979 and his subsequent arrest on December 12, 1979.

The judgment should be modified, on the law, by reversing so much thereof as directed respondent to give petitioner credit for the period of time between May 4, 1978 and July 9, 1979 when recalculating his prison release dates, and, as so modified, affirmed, without costs.

MAIN, MIKOLL, YESAWICH, JR., and WEISS, JJ., concur.

Judgment modified, on the law, by reversing so much thereof as directed respondent to give petitioner credit for the period of time between May 4, 1978 and July 9, 1979 when recalculating his prison release dates, and, as so modified, affirmed, without costs.