BILLY R. TYLER, PETITIONER, v. ROBERT P. HOUSTON, DIRECTOR, NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, RESPONDENT.

728 N.W.2d 549

Filed February 23, 2007.   No. S-07-101.

James R. Mowbray and Jerry L. Soucie, of Nebraska Commission on Public Advocacy, for petitioner.

Jon Bruning, Attorney General, and Linda L. Willard for respondent..

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

The issue in this original action for writ of habeas corpus is whether the time that Billy R. Tyler was free on bond, pursuant to an order of the district court granting a writ of habeas corpus, should be credited against the sentence that Tyler was required to complete after the district court's order was reversed on appeal.

## BACKGROUND

The petitioner, Tyler, is an inmate committed to the custody of the Nebraska Department of Correctional Services (the Department). Robert P. Houston, the director of the Department, is the respondent in this action in his official capacity.

Tyler was convicted in the Douglas County District Court of three counts of delivery of a controlled substance. Tyler was sentenced to 7 to 10 years' imprisonment on each count, with the sentences to be served concurrently, and Tyler was to receive credit for 80 days' time served. The sentences were imposed on February 9, 1996.

During the course of his imprisonment, Tyler forfeited all of his "good time" credit. However, Tyler challenged the forfeiture, and on July 1, 2003, the Johnson County District Court entered an order granting Tyler's pro se petition for writ of habeas corpus, on the basis that Tyler's good time had been improperly forfeited because the authority to approve the forfeiture of good time had been improperly delegated. The Department appealed, but on July 11, 2003, Tyler was released on bond pursuant to an order of the Johnson County District Court.

On November 21, 2003, this court decided *Martin v. Nebraska Dept. of Corr. Servs.*,[1] an appeal brought from a similar challenge raised by another inmate, in which we rejected the Johnson

---

[1] *Martin v. Nebraska Dept. of Corr. Servs.*, 267 Neb. 33, 671 N.W.2d 613 (2003).

County District Court's reasoning. In Tyler's case,[2] we summarily reversed the judgment and remanded the cause to the district court for further consideration in light of *Martin*. Our mandate issued on March 26, 2004, and was spread on the record of the Johnson County District Court on March 29, 2004. Tyler was ordered to surrender himself to the Department.

On April 19, 2004, the Johnson County District Court entered a failure to appear on the record, declared Tyler's bond to be forfeited, and issued a warrant for Tyler's arrest. On November 7, Tyler was arrested, and on November 8, he was reincarcerated by the Department.

Tyler has raised a number of pro se challenges to his continued confinement.[3] In particular, Tyler filed a pro se declaratory judgment action in the Lancaster County District Court requesting that he be granted credit against his remaining sentence for the 485 days he was out on bond. The Lancaster County District Court initially denied Tyler leave to proceed in forma pauperis on the ground that the action was frivolous, but the Nebraska Court of Appeals concluded the action was not frivolous and reversed the district court's determination.[4] The district court denied Tyler the relief sought, and an appeal from that order is pending on this court's docket.

Tyler also filed a pro se petition for habeas corpus relief in the Lancaster County District Court that was denied as premature, and the Court of Appeals affirmed that determination.[5] In its opinion, the Court of Appeals distinguished between the time Tyler was lawfully free on bond and the time he was at large after he was ordered to surrender. The court reasoned that Tyler was not entitled to credit against his sentence for the 202 days during which he was in violation of his bond. The court concluded that

---

[2] *State ex rel. Tyler v. Britten*, 267 Neb. xxii (No. S-03-762, Feb. 19, 2004).

[3] See *State ex rel. Tyler v. Houston*, 15 Neb. App. 374, 727 N.W.2d 703 (2007) (collecting cases).

[4] See *Tyler v. Nebraska Dept. of Corr. Servs.*, 13 Neb. App. 795, 701 N.W.2d 847 (2005).

[5] See *State ex rel. Tyler v. Houston, supra* note 3.

[a]t the time of Tyler's release on bond, his projected release date was November 18, 2005. Because Tyler is not entitled to any credit as time served for the 202 days that he was out of custody and in violation of his appearance bond, his projected release date would have become at least sometime in June 2006.

Tyler filed his petition seeking habeas corpus relief on September 8, 2005. . . . As such, when Tyler filed for habeas corpus relief and when the court ruled on his petition, the district court correctly held that Tyler was not entitled to habeas corpus relief on the basis of credit as time served.[6]

Because it was not necessary in that appeal, the Court of Appeals expressly declined to address whether Tyler was entitled to credit for any other period of time he was out on bond.[7]

Tyler also filed a pro se motion in the Douglas County District Court, generally asking the court to release him from confinement. The Douglas County District Court denied the motion, and the Court of Appeals sustained the State's motion for summary affirmance.[8] Because the case presented the same issue as the appeal from the Lancaster County District Court that was already on this court's docket, we sustained Tyler's petition for further review,[9] and appointed counsel to represent Tyler for purposes of that appeal.

Through his newly appointed counsel, on January 19, 2007, Tyler filed an application with this court for leave to commence an original action for writ of habeas corpus. Ordinarily, in the interest of proper state practice and procedure, we initially require a party to file a petition for a writ of habeas corpus in the trial court.[10] However, Tyler alleged that because of the appeals pending from the prior pro se motions, the district court in neither Douglas nor Lancaster County had jurisdiction to consider Tyler's claim for

---

[6] *Id.* at 379, 727 N.W.2d at 707.

[7] See *id.*

[8] See *State v. Tyler*, 15 Neb. App. ___ (No. A-06-698, Nov. 8, 2006).

[9] *State v. Tyler*, 272 Neb. xxxv (No. S-06-698, Dec. 13, 2006).

[10] See, *Smeal Fire Apparatus Co. v. Kreikemeier*, 271 Neb. 616, 715 N.W.2d 134 (2006); *State v. Goham*, 191 Neb. 639, 216 N.W.2d 869 (1974).

immediate release.[11] We granted Tyler's application, subject to the parties' filing a stipulation of facts with this court within 10 days. The parties filed such a stipulation on January 26, 2007, and we expedited briefing and oral argument.

## ANALYSIS

Habeas corpus is a special civil proceeding providing a summary remedy to persons illegally detained.[12] A writ of habeas corpus is a remedy which is constitutionally available in a proceeding to challenge and test the legality of a person's detention, imprisonment, or custodial deprivation of liberty.[13] A writ is available only when the release of the petitioner from the deprivation of liberty being attacked will follow as a result of a decision in the petitioner's favor.[14] Habeas corpus requires the showing of legal cause, that is, that a person is detained illegally and is entitled to the benefits of the writ.[15]

Neb. Rev. Stat. § 29-2823 (Reissue 1995) provides:

> The proceedings upon any writ of habeas corpus shall be recorded by the clerk and judges respectively, and may be reviewed as provided by law for appeal in civil cases. If the state shall appeal from a final order of a district court made upon the return of a writ of habeas corpus discharging a defendant in a criminal case, the defendant shall not be discharged from custody pending final decision upon appeal; *Provided*, said defendant may be admitted to bail pending disposition of said appeal as is otherwise provided by law.

(Emphasis in original.)

It was pursuant to § 29-2823 that Tyler was released on bond pending the appeal of his Johnson County District Court action. Tyler makes no claim, in this case, that he should be given credit for good time, or for the period of time between April 19 and November 7, 2004, when he was in violation of his bond. Tyler's

---

[11] See, generally, Neb. Ct. R. of Prac. 15A(2) (rev. 2002).

[12] *Smeal Fire Apparatus Co., supra* note 10.

[13] *Id.*

[14] *Id.*

[15] *Id.*

sole claim in this case is that between July 11, 2003, and April 19, 2004, he was in the legal custody of the Department, and that such period should be credited against the maximum terms of his sentences. The parties agree that if that time is credited against Tyler's sentences, he would have served his maximum term of 10 years on June 18, 2006. In other words, if Tyler's sentence should have been credited for the time that he was free on bond between July 11, 2003, and April 19, 2004, his continued detention would be unlawful and he would be entitled to the benefit of the writ.

The traditional common-law rule, in Nebraska and elsewhere, was that a prisoner released before his or her sentence was complete would be required to serve the full sentence, regardless of the circumstances of release, or how long the prisoner had been free.[16] "Where the penalty is imprisonment, the sentence of the law is to be satisfied only by the actual suffering of the imprisonment imposed, unless remitted by death or by some legal authority."[17] Mere lapse of time without imprisonment or other restraint contemplated by the law did not constitute service of sentence.[18]

■ Thus, at common law, a convicted person erroneously at liberty was required, when the error was discovered, to serve the full sentence imposed.[19]

In the absence of some other statutory provision, the judgment of a court imposing a jail sentence can only be satisfied

---

[16] See, *U.S. v. Martinez*, 837 F.2d 861 (9th Cir. 1988); *In re Roach*, 150 Wash. 2d 29, 74 P.3d 134 (2003). See, e.g., *State v. Rider*, 201 La. 733, 10 So. 2d 601 (1942); *State ex rel. Siehl v. Jorgenson*, 176 Minn. 572, 224 N.W. 156 (1929); *Hopkins v. North*, 151 Md. 553, 135 A. 367 (1926); *The State of Florida v. Horne*, 52 Fla. 125, 42 So. 388 (1906); *The State, ex rel., v. McClellan*, 87 Tenn. 52, 9 S.W. 233 (1888); *Ex parte Alexander*, 5 Okla. Crim. 196, 113 P. 993 (1911).

[17] *In re Collins*, 8 Cal. App. 367, 370, 97 P. 188, 190 (1908).

[18] *Anderson v. Corall*, 263 U.S. 193, 44 S. Ct. 43, 68 L. Ed. 247 (1923). Accord, *Caballery v. United States Parole Commission*, 673 F.2d 43 (2d Cir. 1982); *Reese v. Looney*, 252 F.2d 683 (10th Cir. 1958). See, also, *In re Collins, supra* note 17.

[19] *State v. Chapman*, 977 S.W.2d 122 (Tenn. Crim. App. 1997).

by a compliance with its terms. Neither the honest mistake nor the willful disregard of duty on the part of the officers whose duty it is to enforce the judgment can release the convicted party from its consequences.[20]

For example, in *The State, ex rel., v. McClellan*,[21] a prisoner was granted habeas relief by a Tennessee trial court and the warden, representing the state, appealed. The order of the trial court was reversed, and the prisoner was recaptured and returned to prison. The prisoner claimed that because he was "legally released" during the habeas appeal, that time "should be counted as a part of the period of his term."[22] The Supreme Court of Tennessee applied the common-law rule and held that "[t]he reversal determined the illegality of the discharge, and the time elapsing until re-imprisonment cannot be counted as time in prison. The imprisonment contemplated by the [sentencing] statute is confinement in fact, and not in legal or other fiction."[23] Or, as explained by the Supreme Court of Wisconsin, at common law, "no delay of commitment secured by legal strategy, however brilliant, intricate, or attenuated, will be considered a substitute for personal presence in the jail, and there is no 'fiction of law' by force of which one can be at the same time in jail and at liberty."[24]

This court expressed its endorsement of the common-law rule in *Riggs v. Sutton*.[25]

> "The judgment is the penalty of the law, as declared by the court, while the direction with respect to the time of carrying it into effect is in the nature of an award of execution. Where the penalty is imprisonment, the sentence of the law is to be satisfied only by the actual suffering of the imprisonment imposed, unless remitted by death or by some legal authority. Therefore, the expiration of time without

---

[20] *Ex parte Bugg*, 163 Mo. App. 44, 48, 145 S.W. 831, 832 (1912).

[21] *McClellan, supra* note 16.

[22] *Id.* at 55, 9 S.W. at 234.

[23] *Id.* Accord *Chapman, supra* note 19.

[24] *State ex rel. Kassner v. Momsen*, 153 Wis. 203, 208, 140 N.W. 1117, 1119 (1913).

[25] *Riggs v. Sutton*, 113 Neb. 556, 203 N.W. 999 (1925).

imprisonment is in no sense an execution of the sentence. Accordingly where the judgment and sentence is imprisonment for a certain term, and from any cause the time elapses without the imprisonment being endured, it will still be a valid, subsisting, unexecuted judgment. *And where a convict is permitted to absent himself from prison the time when he is absent is no part of the sentence. And therefore where a convicted defendant is at liberty and has not served his sentence, if there is no statute to the contrary, he may be arrested as for an escape, and ordered into custody on the unexecuted judgment, and the result is the same if he escapes to another jurisdiction and is brought back, though by illegal means.*"[26]

This court has applied the common-law rule in a variety of situations, such as escape,[27] parole violation,[28] and the release of an ill prisoner to obtain medical care.[29]

However, some federal and state courts have moved away from the traditional rule in situations where a prisoner is inadvertently released, and addressed whether principles of equity or due process require that the sentence of a mistakenly released prisoner be credited with time spent out of custody.[30] Generally, there are two bases for granting relief to a mistakenly released prisoner— one rooted in equity and the other in constitutional due process. Courts granting equitable relief grant day-for-day credit against a sentence for time spent at liberty where the government mistakenly releases a prisoner due to negligence. Courts granting relief

---

[26] *Id.* at 560, 203 N.W. at 1000 (emphasis supplied). Accord, *Iron Bear v. Jones*, 149 Neb. 651, 32 N.W.2d 125 (1948); *Ulrich v. O'Grady*, 136 Neb. 684, 287 N.W. 81 (1939); *Philbrook v. Dunn*, 121 Neb. 421, 237 N.W. 391 (1931); *Brott v. Fenton*, 120 Neb. 792, 235 N.W. 449 (1931); *Volker v. McDonald*, 120 Neb. 508, 233 N.W. 890 (1931); *Mercer v. Fenton*, 120 Neb. 191, 231 N.W. 807 (1930). See, also, *Goodman v. O'Grady*, 135 Neb. 612, 283 N.W. 213 (1939).

[27] See *Goodman, supra* note 26.

[28] See, *Ulrich, supra* note 26; *Mercer, supra* note 26.

[29] See *Philbrook, supra* note 26.

[30] See *In re Roach, supra* note 16 (collecting cases).

under due process analyze whether reincarceration after an erroneous release violates the prisoner's due process rights.[31]

The record here does not present a due process issue. Under the due process "waiver of jurisdiction" doctrine, the inquiry is whether the state has waived its jurisdiction to recommit for *any* length of time by delaying execution of the sentence and allowing the prisoner to reenter society.[32] But it is implicit in § 29-2823, and well established in our jurisprudence, that a prisoner released by a trial court's writ of habeas corpus may be directed to return to custody if the writ is reversed on appeal.[33] Nor does Tyler argue, in this proceeding, that it was a violation of due process to release and then reincarcerate him.

Rather, the issue here is whether Tyler's sentence should be credited under the equitable doctrine of "credit for time erroneously at liberty," also known as the "installment theory."[34] In the seminal and oft-cited case of *White v. Pearlman*,[35] a prisoner was told, a little over a year into his 5-year sentence, that he was to be released. The prisoner told the warden that there was a mistake, but the prisoner was released nonetheless. The prisoner "re-established his home," but more than 2 years later was told that he was wanted, so he surrendered himself and was committed to prison to serve the remainder of his sentence.[36] The prisoner waited until his sentence would have expired, if it had been running during the time he was out, and applied for habeas relief. The 10th Circuit affirmed a district court order granting relief, explaining that

> [a] prisoner has some rights. A sentence of five years means a continuous sentence, unless interrupted by escape,

---

[31] See *id.* See, generally, *Sanchez v. Warden, New Hampshire State Prison*, 329 F. Supp. 2d 200 (D.N.H. 2004); *Bailey v. Ciccone*, 420 F. Supp. 344 (W.D. Mo. 1976); *Chapman, supra* note 19; *Com. v. Blair*, 699 A.2d 738 (Pa. Super. 1997).

[32] See *Chapman, supra* note 19.

[33] See, *Hulbert v. Fenton*, 115 Neb. 818, 215 N.W. 104 (1927); *State v. Shrader*, 73 Neb. 618, 103 N.W. 276 (1905).

[34] See *Schwichtenberg v. ADOC*, 190 Ariz. 574, 951 P.2d 449 (1997).

[35] *White v. Pearlman*, 42 F.2d 788 (10th Cir. 1930).

[36] See *id.* at 789.

violation of parole, or some fault of the prisoner, and he cannot be required to serve it in installments. Certainly a prisoner should have his chance to re-establish himself and live down his past. Yet, under the strict rule contended for by the warden, a prisoner sentenced to five years might be released in a year; picked up a year later to serve three months, and so on ad libitum, with the result that he is left without even a hope of beating his way back. It is our conclusion that where a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, that his sentence continues to run while he is at liberty.[37]

As it has developed, the doctrine holds that a prisoner is entitled to credit against his or her sentence for time spent erroneously at liberty due to the State's negligence.[38] To be eligible for credit, the prisoner must show that there was simple or mere negligence on the part of the government and that the delay in execution of sentence was through no fault of his or her own.[39] In addition, because the doctrine awards equitable relief, some courts have considered factors such as whether the prisoner absconded legal obligations while at liberty and whether the prisoner had no further criminal convictions.[40]

But *White*, and cases relying upon it, was decided on circumstances in which a prisoner was inadvertently released due to the negligence of a jailor. Thus, given a situation nearly identical to that of the instant case, in *Hunter v. McDonald*,[41] the 10th Circuit concluded that its decision in *White* did not apply. In *Hunter*, a prisoner was sentenced to a 15-year term of imprisonment, but after approximately 4 years, a federal district court granted the prisoner habeas relief and ordered that he be discharged. The

---

[37] *Id.*

[38] See, *In re Roach, supra* note 16; *Pugh v. State*, 563 So. 2d 601 (Miss. 1990).

[39] *Martinez, supra* note 16; *Schwichtenberg, supra* note 34.

[40] See, *In re Roach, supra* note 16; *Brown v. Brittain*, 773 P.2d 570 (Colo. 1989). But cf. *Schwichtenberg, supra* note 34.

[41] *Hunter v. McDonald*, 159 F.2d 861 (10th Cir. 1947).

order of discharge required the prisoner to give a bond, conditioned that the prisoner abide by the 10th Circuit's decision on an appeal from the order granting relief. The 10th Circuit reversed the judgment,[42] and the prisoner returned to custody, but filed a later action claiming he was entitled to credit for the time he was out of custody by virtue of the order of discharge. The 10th Circuit rejected the prisoner's reliance on *White*, explaining that

[t]here, the discharge was due to the mistake of the Warden, an agent of the administrative branch of the Government. Here, petitioner was out of prison by reason of the original order of discharge and the order staying the mandate of this court which orders were induced by applications prosecuted by petitioner. These orders can, in no sense, operate as an estoppel against the United States or its administrative agents. The Warden was compelled to obey the original order of discharge pending review by the appellate courts.

*A prisoner is not entitled to credit for the time he is at liberty under an erroneous discharge on a writ of habeas corpus.* Imprisonment contemplated by a sentence imposed by a Federal court is confinement in fact and not merely in fiction.[43]

Similarly, in *Hayward v. U.S. Parole Com'n*,[44] the Eighth Circuit also addressed a situation in which a federal prisoner had been released on his own recognizance after the U.S. District Court granted his petition for habeas relief but the Eighth Circuit had reversed the order.[45] The prisoner filed another petition for habeas relief, arguing that the time he spent free pending appeal of his first habeas petition should have been credited against his sentence.[46] The Eighth Circuit concluded that the time the prisoner spent at liberty was "akin to that of a prisoner who is

---

[42] See *Hudspeth v. McDonald*, 120 F.2d 962 (10th Cir. 1941).

[43] *Hunter, supra* note 41, 159 F.2d at 862-63 (emphasis supplied). See, also, *Anderson v. State*, 710 So. 2d 491 (Ala. Crim. App. 1997).

[44] *Hayward v. U.S. Parole Com'n*, 740 F.2d 610 (8th Cir. 1984).

[45] See *Hayward v. U. S. Parole Commission*, 502 F. Supp. 1007 (D. Minn. 1980), *reversed* 659 F.2d 857 (8th Cir. 1981).

[46] See *Hayward, supra* note 44.

released pending direct appeal of his conviction" and affirmed the denial of relief.[47]

We are persuaded by the logic of these cases, and likewise conclude that the purpose of the doctrine of credit for time erroneously at liberty is not served by its application where a prisoner is not inadvertently released. "[S]tatements in the cases to the effect that a prisoner has a right to serve a continuous sentence have been made in a context in which a prisoner inadvertently has been released, with the state attempting, sometimes years later, to reincarcerate him."[48] The limited function of the doctrine of credit for time erroneously at liberty is clear: Its sole purpose was to prevent the government from abusing its coercive power to imprison a person by artificially extending the duration of his or her sentence through releases and reincarcerations.[49] The government is not permitted to play cat and mouse with the prisoner, delaying indefinitely the expiration of his or her debt to society and reintegration into the free community.[50] But unlike the "false release" cases, our case presents no allegations of governmental or prosecutorial harassment, misconduct, or oversight.

■ The doctrine of credit for time erroneously at liberty is simply not applicable to the circumstances of this case. The fact that the Johnson County District Court's order granting habeas relief was reversed on appeal does not make Tyler's release "erroneous" within the meaning of the doctrine, as it was not the result of negligence or some other unauthorized act.[51] We express no

---

[47] *Id.* at 611. See, also, *Matthews v. Meese*, 827 F.2d 313 (8th Cir. 1987); *Mtr. of Licitra v Coughlin*, 61 N.Y.2d 450, 463 N.E.2d 1, 474 N.Y.S.2d 685 (1984); *Chapman, supra* note 19.

[48] *In re Garmon*, 572 F.2d 1373, 1376 (9th Cir. 1978). See, also, *U.S. v. Miller*, 49 F. Supp. 2d 489 (E.D. Va. 1999).

[49] *Free v. Miles*, 333 F.3d 550 (5th Cir. 2003). See *Dunne v. Keohane*, 14 F.3d 335 (7th Cir. 1994).

[50] *Dunne, supra* note 49. See *People v. Levandoski*, 237 Mich. App. 612, 603 N.W.2d 831 (1999).

[51] See *Mtr of Licitra v Coughlin*, 93 A.D.2d 349, 463 N.Y.S.2d 289 (1983), *affirmed supra* note 47, 61 N.Y.2d 450, 463 N.E.2d 1, 474 N.Y.S.2d 685 (1984). See, also, *Hunter, supra* note 41; *Merchant v. State*, 374 N.W.2d 245 (Iowa 1985); *Chapman, supra* note 19.

opinion on whether we would adopt the doctrine under other circumstances. We simply conclude that even if the doctrine is available under Nebraska law, it would not be applicable to a release on bail pursuant to § 29-2823.

We recognize that under Nebraska law, there is a policy against serving sentences in increments or installments. We explained in *State v. Texel*[52] that

> widely varying the method of serving periods of incarceration increases the likelihood of uneven application of the law to various individuals in our society. Not only is a prisoner entitled to pay his debt to society in one stretch, not in bits and pieces,[53] but society also has the right to expect that once a defendant has been incarcerated, the time will not be served in bits and pieces.

■ But the principle of *Texel*, and the impact of Tyler's argument that piecemeal sentences are unlawful, is diluted by the intent of § 29-2823, and our cases holding that a prisoner mistakenly released by a trial court's writ of habeas corpus may be directed to return to custody if the writ is reversed on appeal.[54] Section 29-2823 is intended to balance the interests of the State and the prisoner in a habeas action by allowing the prisoner to ask for immediate release, yet permitting the State to effectively seek appellate review of a trial court's decision to grant the writ. The implication of demanding bail from a prisoner to be released pending appeal of a habeas decision is that the prisoner may be asked to return. In other words, the statute and our jurisprudence contemplate that the possibility of interrupted incarceration is outweighed by the prisoner's right to relief and the State's interest in seeking appellate review of that relief.

Tyler appears to argue that the policy against piecemeal sentences is served by requiring that a sentence run, uninterrupted, even when a successful habeas petitioner is released on bond. But

---

[52] *State v. Texel*, 230 Neb. 810, 814, 433 N.W.2d 541, 544 (1989).

[53] See *Segal v. Wainwright*, 304 So. 2d 446 (Fla. 1974).

[54] See, *Hulbert, supra* note 33; *Shrader, supra* note 33.

*Texel*[55] and *White*[56] make clear that the problem with piecemeal sentences is not the *technical* interruption of a sentence, but the *actual* interruption in the prisoner's incarceration, and the effect on the prisoner and society if a prisoner is released from incarceration then forced to return.[57] In an ideal world, that problem would be avoided entirely, but § 29-2823 establishes that it is a tolerable risk when other interests are considered. Tyler's contention that he has a right not to serve his sentence in installments is hardly persuasive, "for it was his action, vigorously contested by the government, that resulted in his release on bail."[58] When he posted bond, Tyler surely understood that if the State prevailed on appeal, he would be returned to custody. A return to interrupted incarceration was a possibility that Tyler accepted by posting bond.

Tyler also argues that the Johnson County District Court had no authority to "suspend" his sentence during the State's appeal from the court's order granting habeas relief. But Tyler assumes that the sentence would have continued to run unless the court acted affirmatively to interrupt it. In fact, as the common-law principles set forth above demonstrate, the running of a sentence is interrupted by operation of law due to the fact of release from imprisonment. In the absence of a specific statutory provision, an affirmative act of the court is required to award credit for time spent at liberty, pursuant to the equitable and due process principles also articulated above. And, as we have already explained, we do not find those principles to be applicable here.

In fact, Tyler's reading of Nebraska law would place district courts applying § 29-2823 in a difficult position. If a prisoner's sentence continued to run while the prisoner was released on bond, the district court would face one of two options: (1) release the prisoner, and potentially moot the State's right to appellate review by allowing the prisoner's sentence to be completed during the

---

[55] *Texel, supra* note 52.

[56] *White, supra* note 35.

[57] See, *Free, supra* note 49; *Dunne, supra* note 49.

[58] See *United States v. O'Brien*, 273 F.2d 495, 498 (3d Cir. 1959).

appellate process, or (2) refuse bail, and continue to incarcerate a prisoner who has a colorable claim to immediate release. And *neither* choice would eliminate the possibility of an interrupted sentence, should the order granting the writ be reversed before the prisoner's sentence would have been complete. It would be inconsistent with the purpose of § 29-2823 to conclude that a prisoner who is released on bail under the statute should nonetheless be credited for the time that the prisoner spends at liberty.

■ Tyler also argues that he was not discharged from "custody" because § 29-2823 provides that if the State appeals from an order granting habeas relief, "the defendant shall not be discharged from custody pending final decision upon appeal." But Tyler takes this language out of context. Section 29-2823 states that the prisoner shall not be discharged from custody, but provides that the prisoner *may* be admitted to bail. Tyler argues that admitting a prisoner to bail need not release the prisoner from "custody" for these purposes and calls our attention to other provisions under which he argues that "custody" does not mean incarceration, such as work release and furlough.[59] But under such temporary leaves, a convicted prisoner is subject to the custody and control of the penal complex.[60] And in any event, admission to bail is regarded as a release from custody.[61]

## CONCLUSION

We conclude, based on long-established Nebraska law, that while Tyler was lawfully free on bond, he was not serving his sentence, and that the time he spent free should not be credited against his maximum sentence for purposes of determining his release date. The equitable doctrine of credit for time erroneously at liberty is not applicable to these circumstances. Tyler's petition for writ of habeas corpus is denied.

WRIT OF HABEAS CORPUS DENIED.

---

[59] See Neb. Rev. Stat. § 83-184 (Reissue 1999).

[60] *State v. Coffman*, 213 Neb. 560, 330 N.W.2d 727 (1983).

[61] See Neb. Rev. Stat. § 29-908 (Reissue 1995) (establishing penalty for failure to appear after prisoner "released from custody under bail"). See, also, *U.S. v. Arpan*, 915 F.2d 1180 (8th Cir. 1990); *Anglin v. Johnston*, 504 F.2d 1165 (7th Cir. 1974).